**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LAKEISHA DARDEN,** | § | **Civil Action No.:** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **S&B ENGINEERS AND** | § | |
| **CONSTRUCTORS, LTD.,** | § | |
| *Defendant* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, LAKEISHA DARDEN, Plaintiff, by and through her attorney of record, who files this Original Complaint against S&B Engineers and Construction, Ltd., and for causes of action would show unto this Honorable Court as follows:

## A. PARTIES

1. LAKESHIA DARDEN, Plaintiff, is a natural person and of the full age of majority, who resides in Harris County, Texas, and has so resided at all times material to this suit.

2. Defendant, S & B ENGINEERS AND CONSTRUCTORS LTD., is a foreign corporation authorized to do business in the State of Texas, with its headquarters located in Houston, Texas and other offices, including the office that employed Plaintiff, located in Houston, Harris County, Texas.  Defendant can be served with process by serving its registered agent, Corporation Service Company, 1900 W. Littleton Blvd, Littleton, Colorado 80120-2023.

## B. JURISDICTION & VENUE

3. This Court's jurisdiction arises under federal law and jurisdiction and is specifically conferred by this court by 42 U.S.C § 2000e(5). Equitable and other relief are also sought

under 42 U.S.C. § 2000e(5)(g). More specifically, Plaintiff's complaint arises under Title VII of the Civil Rights Act of 1964 ("Title VII") discrimination on the basis of race, Title VII Retaliation, Harassment, and Hostile Work Environment, the federal Equal Pay Act, 29 U.S.C. § 206, et. seq. and Constructive Discharge.

4. Under 28 U.S.C. § 1391(b), venue is appropriate because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district, and there are employment records relevant to Plaintiff's claims maintained and administered by Defendant in this district.

### C.   EXHAUSTION OF ADMINISTRATIVE PROCEDURE

5. Plaintiff timely filed a charge of discrimination based on race and retaliation with the Equal Employment Opportunity Commission ("EEOC") against Defendant (*see* Charge of discrimination attached hereto as Exhibit "A").

6. Plaintiff timely filed this complaint after receiving a Right to Sue Letter issued by the EEOC dated September 22, 2022 (*see* Right to Sue Letter attached hereto as Exhibit "B").

7. Plaintiff exhausted all available administrative remedies prior to filing this complaint.

### D.   STATEMENT OF FACTS

8. On or about May 28, 2019, Lakeshia Darden (hereinafter referred as "Darden" or "Plaintiff") was hired by S & B Engineering and Constructors (hereinafter referred as "S&B" or "Defendant") as a Human Resource ("HR") Supervisor under the supervision of Jeremy Tyler ("Tyler"), Vice President of Human Resources.

9. On or about August 23, 2019, Ralph Morales ("Morales"), Vice President of S&B who brought Plaintiff into company retired.

10. On or about October 2019, Tyler was promoted and shortly thereafter started discussions regarding placing Darden in a more central role as the "HR-nucleus" for the team.

11. On or about January 1, 2020, Darden was promoted to supervise both Dot Frames ("Dot") and Susie Acosta ("Susie).

12. Darden became accountable for: (1) performance of her direct reports, (2) developing team goals, (3) attending weekly manager meetings, and (4) digitizing the file room.

13. Darden also took detail to pioneer and streamline the entire new hire onboarding process from a process that historically took a half-day orientation to a process that took only ninety (90) minutes to complete. She also automated the FMLA, life insurance, and disability processes for the HR department by transmitting everything to digital access. She created templates that were easily accessible to all employees to show when they would be approved for certain benefits. All these additional tasks and duties were completed with no title change or pay increase.

14. On or about March 10, 2020, Tyler came into Darden's office and discussed figuring out how the company would move forward during the pandemic. At that time, he assigned Darden as point of contact for the COVID response team. Darden accepted the assignment and agreed to put forth her best efforts.

15. On or about June 2020, Tyler expressed to Darden that Kevin Hughes ("Kevin") and the recruiting team would manage the COVID team, and he wanted Darden to focus on other projects. Shocked about the abrupt change, Darden expressed to Tyler that this project was something she took pride in and really enjoyed doing. She wanted to continue to be kept in the loop since she initially started the team. Tyler moved forward with the change.

16. On or about July 2020, Darden, Kevin, Vergel Green ("Green"), Nicole Brisko ("Nicole"), Anna Burroughs ("Anna"), and Dasha Jordan ("Dasha") all received a 6% increase from S&B for efforts during the pandemic.

17. On or about November 3, 2020, Darden scheduled a meeting with Tyler to express some concerns she was having.

18. On or about November 4, 2020, Tyler and Darden discussed many concerns surrounding her employment.  For example, she vocalized not feeling apart of the team, and how she felt undercompensated based on her contribution to S&B.  She mentioned not having access to the executive team, which hindered her from thriving within her position. More specifically she revealed that Tyler, Kevin and Wendy Coker ("Wendy") never extended an invite to their monthly lunch engagements.  Lastly, Darden discussed being excluded from the initial merger of "Bibbs acquisition," causing assignments to be incorrectly executed because of lack of information available at the initial meeting.

19. Tyler downplayed Darden's concerns and assured her that she was "the nucleus" of the HR department and that her role held the department together. He even suggested a bi-weekly meeting to ensure that he and Darden were on the same page.

20. On or about December 16, 2020, Darden sent a calendar invite to Tyler to begin their bi-weekly meetings.

21.  On or about January 10, 2021, Darden learned that lateral HR managers in her department Kevin (Caucasian- male) and Cook (Caucasian-female) were earning at least $40,000 more than Darden was being paid.

22. On or about January 14, 2021, Darden emailed a meeting invite to Tyler in order to discuss her work performance, since she had been in a managerial position for one (1) year.

23. On or about January 20, 2021, at 2:00PM Darden had a scheduled meeting with Tyler.

24. During this meeting, Darden expressed how she felt under compensated for all of the additional responsibilities she inherited over the previous year. She also told him she felt she was being treated less favorably.

25. Tyler told Darden that she was a vital part of the team and that he had really big plans for her, however, he never expounded on those plans.  Tyler also told Darden that he was not able to give her a raise and that they were "frozen" due to COVID.

26. On or about April 2021, Darden reported to Tyler the exclusion from office activities, e.g., Astros game tickets offered only to Wendy, Kevin, and Tyler.

27. On or about May 28, 2021, Darden had a scheduled meeting to discuss her Performance Evaluation with Tyler where she received an "Exceeds Expectations and Outstanding" review.

28. Darden again, expressed the pay disparity and less favorable treatment issue mentioned in prior meetings.  Tyler said that she was a great part of the team and that she had been the only employee who received the 6% increase in July of 2020, which Darden knew was false.

29. On or about September 28, 2021, Darden and Daniela Garza ("Garza") overheard a conversation between Wendy and Kevin where they discussed Darden's salary disparity, confirming that she was undervalued in the department, despite her exceptional qualifications.

30. During this conversation inappropriate comments were made by Kevin and Wendy.  Kevin stated to Wendy that, he understood that LT likes to spend time with her family and do

things with her kids, but "she won't ever be recognized." He also proceeded to say things like, "she should leave if she doesn't fucking like it."

31. On or about September 29, 2021, Darden made Kevin aware that she heard the conversation and Kevin apologized to Darden and Wendy sent a team's message apologizing.

32. On or about September 30, 2021, Darden used PTO to stay home and regroup, she was humiliated and felt it was too hostile to go into S&B in light of the recent berating and tense circumstances.

33. On or about October 4, 2021, at 3:00PM Kevin came to Darden's office to apologize again. He said that he was just talking "shit," and that he understands that it may take some time for her to trust him again, but he hopes they can get back on good terms.

34. At 3:15PM Darden approached Miller, she was visibly upset so they went to the S&B Conference Room. Darden told Miller about the Wendy and Kevin incident and that Kevin had approached her a second time. They discussed the salary bonus, PTO, vacation and flexible schedule disparity between her and her Caucasian male co-workers.

35. Miller was very apologetic and made it clear that he did not want Darden to leave S&B. Furthermore, Miller told Darden that she did not have any options on resolving because Kevin and Tyler were friend and the "C-suit" loved Tyler. Miller agreed that Darden was being undervalued but said that if this were a different era of executive, they would have listened to her concerns. However, Dean Quinn (General Counsel) and Tyler were friends, and he wouldn't do anything either. The conversation ended and no resolution was made.

36. On or about October 8, 2021, Darden called Tyler to let him know the incident with Kevin and Wendy, her issues regarding pay disparity, and that she received a job offer. Tyler told

her not to make any decisions, and to give him until Tuesday when she returns to talk about her options.

37. On or about October 11, 2021, Darden used PTO and Tyler sent her a calendar invite for a meeting.

38. On or about October 12, 2021, at 8AM, Darden was ushered into a meeting with Tyler and Miller.

39. Tyler told Darden that she had brought some concerns to his attention that will be addressed. He recanted a conversation that they had on October 8, 2021, regarding the incident that occurred on September 28, 2021, and her discontent with her salary. Tyler told Darden that she should accept the job offer and do what's best for her family. Darden replied that after their discussion, she weighed her options and decided to remain with S&B. Tyler then told Darden that he made a decision that was best for the business since she told him she received another offer.

40. Darden made it clear that she only sought new opportunities because she was unaware of how to handle the crushing incident that occurred on September 28, 2021 with Wendy and Kevin. Tyler then told Darden that he'll pay her two (2) weeks to transition since she's currently working on another project. He said that he would have to remove her access and she could work from home over the next two (2) weeks. Darden repeated to him verbatim to confirm that he was asking her to leave because she reported an incident, and she advised him she received another offer. He responded that S&B is in an at-will state and we all have rights to work. Darden told him that this was pure retaliation for her reporting the incident. Tyler responded "you know I'm not like that." Darden handed Tyler her work badge, collected her belongings and exited the office.

41. October 12, 2021, was Darden's last day at S&B.

## E.  LAW & ARGUMENT

Plaintiff incorporates by reference the allegations in the preceding paragraph, his sworn statement, and he further adds the following in support of the following claims against Defendant:

### *Title VII Race Discrimination*

42. All foregoing allegations are incorporated herein by reference.

43. Plaintiff was a member of a protected class because she was the only African American HR Manager for S&B.

44. Plaintiff was qualified for her position because on or about January 1, 2020 Darden was promoted to Dot Frames ("Dot") and Susie Acosta ("Susie") supervisor and became accountable for the performance of her direct reports, developing team goals, attending weekly manager meetings, and digitizing the file room.  Darden also, streamlined the new hire process from a half-day orientation to one-and-a-half hour, as well as automated FMLA, life insurance and disability processes for the HR department by transmitting everything to digital access with no title change or pay increase.

45. Also, in her May 2021 Performance Evaluation received an "Exceeds Expectation" review from Tyler.

46. Beginning on or about November 14, 2020, Darden began discussing feeling undercompensated based on her value to her supervisor Tyler.

47. Others outside of Plaintiffs protected class were treated more favorable because on or about January 10, 2021, Darden learned that lateral HR managers in her department Kevin (Caucasian male) and Wendy(Caucasian female) were earning at least $40,000 more than Darden was being paid, even though she healed the most certifications in her field on the

managerial team and also was one of two managers who achieved a Master's education level (the other being Rob Mason ("Rob") a white male who was compensated the highest on the HR managerial team.)

48. Tyler assigned Darden as point of contact for the COVID response team and was later removed and told by Tyler that Kevin and the recruiting team would manage the COVID team moving forward.

49. Darden was excluded from receiving Astros game tickets offered only to Wendy, Kevin, and Tyler and monthly lunch's they would take.

50. Darden was being excluded from the initial merger of "Bibbs acquisition" which impacted her duties and assignment.

### *Title VII Retaliation*

51. All foregoing allegations are incorporated herein by reference.

52. Darden engaged in protected activity which involved the opposition to the discrimination, harassment, and hostile work environment she was experiencing. Darden complained to her supervisor Tyler about her feeling undercompensated and the pay disparity between her and her white coworkers. She also reported the disparate treatment she received and requested a raise that reflects her value and position in S&B.

53. After these complaints were made, Plaintiff began to experience retaliatory treatment. Specifically, Plaintiff was excluded from office activities and was the subject of unprofessional conversations between other S&B employees. Plaintiff continued to report these incidents to management to no avail. Because S&B was not responsive to her complaints and did not take steps to rectify the situation, the plaintiff began to seek other

employment. Once defendants became aware of this, they suggested Plaintiff seek other employment if she was not satisfied with her salary.

54. There is a casual connection between Plaintiff's protected activity and these adverse actions taken by Defendant. That is, but for Plaintiff's opposition to unlawful discrimination, harassment, and hostile work environment, Defendant's retaliation would not have occurred.

*Harassment*

55. All foregoing allegations are incorporated herein by reference.

56. Defendant's conduct at the time towards Plaintiff was offensive, the ridicule, mockery, insults and put downs came to interfere with Darden's work environment. It got to the point that she wanted to request time off to avoid the intimidation and ridicule made her attempt report the pay disparity between herself and her coworker to point of her constructive discharge was so severe and pervasive that it created a work environment that any reasonable person would consider the same conduct exhibited by Defendant intimidating, hostile, and abusive.

57. Plaintiff was subjected to humiliating and disparaging remarks when she and another coworker Garza overheard a conversation between Kevin and Wendy regarding the pay disparity and confirming that she was undervalued in the department, despite her exceptional qualifications.

58. They continued with making a comment stating, "Maybe if Darden didn't have to go pick up her children, she would receive more pay."

59. Plaintiff reported this incident to her supervisor, but to no avail nothing was done until Plaintiff decided to confront the commenting parties and then was, she given an apology.

*Hostile Work Environment*

60. All foregoing allegations are incorporated herein by reference.

61. Darden reported to Tyler her feelings about the pay disparity and feeling left out on or about November 14, 2020, January 20, 2021, April 2021, and May 28, 2021.

62. Darden and Garza overheard humiliating and berating conversations between Kevin and Wendy where they discussed Darden's salary disparity, confirming that she was undervalued in the department, despite her exceptional qualification. They went on to discuss and attack her motherhood and loyalty to the company because she had chosen to have children. After reporting this incident, things became increasingly awkward at the office and Darden's treatment worsened. She was ridiculed and management took a sense of aggressiveness with how she was handled for verbalizing her opposition to said treatment.

63. Wendy mentioned that Darden was disgruntled because she and Kevin were Tyler's favorites.

64. Kevin said "I just had this conversation with Jeremy and told him I don't want to have to walk on eggshells. I don't know what to say about LT(Darden), she's kind of weird."

65. Darden made Tyler and Miller aware of the unprofessional and disparaging conversation on or about September 28, 2021.

66. On or about September 29, 2021, Darden made Kevin aware that she heard the conversation and Kevin apologized to Darden and Wendy sent a team's message apologizing.

67. On or about September 30, 2021, and October 11, 2021 Darden used PTO because she felt it was too hostile to go into work.

### *Equal Pay Act*

68.  All foregoing allegations are incorporated herein by reference.

69. 29 U.S.C. § 206 of the Equal Pay Act prohibits compensating male and female employees differently, for performing equal work.  Equal work is considered duties which require equal skill, effort, and responsibility, performed under similar work conditions.  The Equal Pay Act is a statute of strict liability, no intent to discriminate need to be found.

70. Plaintiff was the only African American woman that held a HR Managerial position.

71. Plaintiff was paid at least $40,000 less than the white male HR Managers, even though she held the most certifications in her field on the managerial team and also was one of two managers who achieved a Master's education level.  The other being Rob, a white male who was compensated the highest on the HR managerial team.  All of these Managers were hired after Plaintiff began her tenure with the Defendant.

### *Constructive Discharge*

72. All foregoing allegations are incorporated herein by reference.

73. Tyler was aware that Plaintiff had been inquiring for other jobs, pulled her into his office with Miller present and offered her two (2) weeks of severance, and informed plaintiff that if she was not happy with her salary, she should take another job.

74. Plaintiff questioned this remark by stating, "are you asking me to leave?" and Tyler responded affirmatively, so Darden handed in her work badge and exited the office.

75. Given the recent hostility in her treatment and the fact that she had not been allowed to air out her grievance without facing isolation of being sent home to work away from her team, plaintiff reasonably believed the burden of the hostility to great to bear and when

managements push turned into a shove she had no alternative except to take the directive to leave and never return.

## F. Jury Demand

76. Plaintiff hereby makes demand for trial by jury.  The required statutory jury fee has already been tendered.

## G. Prayer

77. Wherefore, Plaintiff asks for judgment against Defendant for the following:

    A.  Back Pay and Front Pay;

    B.  Punitive Damages;

    C.  Mental anguish and emotional distress;

    D.  Pre-Judgment and Post Judgment Interests;

    E.  Reasonable attorney's fees;

    F.  Court costs; and

    G.  All other relief this court deems appropriate.

*(Signature on the Following Page)*

Respectfully Submitted,
Daniel, Williams & Associates PLLC

*/s/ Helen Daniel*
Helen Daniel, Attorney-in-Charge
Federal Bar No. 1026095
h.daniel@danielwilliamslaw.com
Kathryn Williams
Federal Bar No. 1384795
k.williams@danielwilliamslaw.com
2201 Hermann Drive
Houston, Texas 77004
T: 713.229.9997
F: 281.501.6777
ATTORNEYS FOR LAKEISHA DARDEN